# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TERESA MICHELLE PARRISH,**

        **Plaintiff,**

**v.**                                              **Case No.  8:13-cv-1574-T-23TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**[1]

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.  Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed.

A.

      Plaintiff was 54 years old at the time of her administrative hearing in November 2011.  She stands 5 feet 4 inches tall and weighed 204 pounds at that time.  Plaintiff has a GED.  Plaintiff reported past relevant work in sales, as a dye-punch operator, and as a waitress/bartender.  Plaintiff applied for disability benefits in July 2010, alleging disability as

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

of August 14, 2009, by reason of mental and physical impairments.  Plaintiff's application was denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (ALJ) on November 7, 2011.  The Plaintiff was represented at the hearing and testified in her own behalf.  In essence, Plaintiff testified that she is unable to work because of her bipolar condition.  By her account, the condition keeps her locked up in her room for up to two weeks at a time.  She hears and sees things that are not there.  She takes medication but it does not help much.  She tends to be more depressed than manic.  She cannot stand to be around people.  In her last job, she would snap at people for no reason and then burst out crying.  She also suffers from arthritis and scoliosis.  She tried Celebrex for her physical problems but it did not help.  She tried ibuprofen but has stopped taking it.  She has had carpal tunnel surgery on both hands but surgery failed.  Her hands swell, stiffen, and hurt.  Her medications make her sleepy and she has gained weight.  Her concentration is blurry and she forgets things.

Plaintiff also claimed pain in her left shoulder, left leg, and arthritis in her ankles, all of which cause constant pain.  She claimed further that, once every few months, her bowels act up and she has to use the bathroom frequently.

Plaintiff described very limited daily activities.  Plaintiff stated that her husband does most of the housework.  She stated that she is unable to leave her room about seven to fourteen days a month because of her depression and pain.  She said that she picks up her granddaughter from school on Wednesdays and she occasionally shops with her husband.  She said that she neglects her hygiene at times.  According to Plaintiff, on a good day, she may cook three or four meals and freeze them for when she is not doing well.  She estimated

that she can sit for an hour or so at a time before her back hurts and she has to stand. She said she can stand in one spot for fifteen minutes but then has to sit, she can walk about one-half a block but then has to stop for a time, and she can lift a gallon of milk.

Plaintiff testified that she received unemployment compensation for a time after her last job and was looking for work. Plaintiff acknowledged past alcohol abuse. By her account, she stopped drinking about six months before the hearing. Prior to that, she said was drinking about a liter of vodka a week. (R. 43-56).

The ALJ next took testimony from Irvin Roth, a vocational expert (VE). Assuming a person with no exertional limitations but unable to work with the public and only occasional interactions with co-workers and supervisors, such person could perform Plaintiff's past work as a dye operator. With an additional limitation for light exertional work, the VE testified that such person could perform the work of small parts assembler and cleaner/housekeeping. If due to pain or a mental impairment such person could not concentrate or attend to basic job tasks, the VE stated no work would be available. The VE also stated that if an individual would miss work more than three days a month, no work would be available. In response to counsel's questioning, the ALJ advised that if Plaintiff suffered mental limitations consistent with those found in Exhibit 14F (Psychiatric Impairment Questionnaire dated May 19, 2011), she would conclude that there was no work available. (R. 56-62).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By her decision of February 15, 2012, the ALJ determined that while Plaintiff has severe impairments related to obesity, degenerative disc disease/scoliosis in the lumbar spine,

3

bipolar disorder, and history of alcohol abuse, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 23-33).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

4

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

The Plaintiff claims two errors on this appeal.  First, she contends that the ALJ erred by failing to properly weigh the medical evidence.  Second, she claims the ALJ failed to properly evaluate her credibility.

By her first claim, Plaintiff argues that the ALJ erred by affording only "little weight" to the opinions of treating psychiatrist, Dr. David Donahue, and to the opinion of examining psychiatrist, Dr. Karl Jones.  As a treating doctor, Plaintiff contends that Dr. Donahue's opinions were entitled to substantial weight because they were based on his clinical and diagnostic findings and were uncontradicted by other record evidence.  According

to Plaintiff, the ALJ improperly considered her continued use of alcohol as a basis for discounting the opinions;[2] improperly concluded that Dr. Donahue's opinions were contrary to his treatment history, which did not include therapy or hospitalizations, because Plaintiff testified she could not afford therapy; and failed to cite to other evidence that was contradictory to Dr. Donahue's opinions.  Even if the ALJ was not required to give controlling weight to Dr. Donahue's opinions, Plaintiff urges that the ALJ still was required to weigh the regulatory factors when considering his opinion and here the ALJ ignored them. Plaintiff also argues that the ALJ erred by rejecting Dr. Jones' opinion on the basis that he only evaluated her once and did not find that she had a substance abuse problem.  Finally, Plaintiff argues that the ALJ erred by giving greater weight to the opinions of the nonexamining state agency psychologists.  Plaintiff notes that those doctors did not have the benefit of a longitudinal treatment record or the opinions from Dr. Donahue and Dr. Jones, and thus their opinions are not entitled to substantial weight.  (Doc. 11 at 10-16).

In response, the Commissioner urges that the ALJ properly considered Plaintiff's continued alcohol use.  Consistent 20 C.F.R. § 404.1535 and Social Security Ruling (SSR) 13-2p, the ALJ found Plaintiff not disabled after consideration of all her impairments, including alcohol abuse.  In the Commissioner's view, the ALJ properly discounted the opinions of Dr. Donahue on the basis of Plaintiff's continued use of alcohol as the doctor

---

[2]Plaintiff cites 20 C.F.R. § 404.1535 and urges that it was improper for the ALJ to consider whether alcohol use was material to finding of disability without having first determined that Plaintiff was disabled.  By this argument, the ALJ used a "back-door" method to deny her claim based on her alcohol use.  She urges that there was no evidence that she used alcohol throughout the period or that upon ceasing to use alcohol her condition improved.  In sum, this reason for rejecting the doctors' opinions was inappropriate.

appeared unaware of alcohol use.  Moreover, the Commissioner contends that the opinions were inconsistent with the conservative nature and extent of the doctor's treatment, which did not show extensive therapy or hospitalization.  Despite her claim that she could not afford treatment, the Commissioner points out there is no other evidence to support that this was a cause for no additional treatment.  Further, the Commissioner notes that Dr. Donahue's notes reflect consistent findings that Plaintiff was cooperative, had spontaneous speech, and organized and goal-directed thoughts, with fair to good insight and judgment and no suicidal intent and no psychotic symptoms.  As for Dr. Jones, the Commissioner urges that the ALJ properly discounted his opinion based on the lack of treating relationship, the cursory checkmark questionnaire he completed, and the failure to mention Plaintiff's history of alcohol abuse.  Contrary to Plaintiff's contention, the Commissioner maintains that the ALJ's evaluation of this doctor's opinion was made consistent with the factors dictated by the regulation at 20 C.F.R. § 404.1527(c)(1)-(4).  Finally, as for the nonexamining doctors, there was no error in giving their reports "some weight."  (Doc. 14 at 4-12).

Both Dr. Donahue and Dr. Jones opined that Plaintiff suffered numerous marked limitations in functioning by reason of her mental condition such that she was unable to work. *See* (R. 468-75, 491, 482-89, 476-80).  The ALJ gave "little weight" to the opinions of both doctors.  The ALJ explained that Dr. Donahue's opinions deserved little consideration because the doctor appeared unaware of the extent of Plaintiff's alcohol problem, and at the time of his July 2011 opinion, the doctor incorrectly believed that Plaintiff was not using alcohol.  The ALJ also noted that the record did not reflect extensive therapy or

7

hospitalization consistent with the extreme limitations imposed.  (R. 31).  As stated by the

ALJ:

> The doctor, however, appears to be unaware [of] the extent of the
> claimant's alcohol problem.  Apparently, the claimant has been deceiving
> Dr. Donahue for quite some time about her alcohol use.  As outlined above,
> the claimant repeatedly denied alcohol use, but admitted at the hearing that
> she was drinking a liter of vodka a week.  Dr. Donahue is under the
> impression that the claimant 'does not presently utilize alcohol to the best of
> my knowledge.'  Even if the claimant's abuse of alcohol has been reduced,
> the doctor's impression is still not accurate because the claimant admitted to
> Dr. Jones she still drinks alcohol.  The doctor places extreme limitations on
> the claimant's ability to function.  The record, however, does not reflect
> extensive therapy or hospitalization.  Given such extreme limitations as
> found by Dr. Donahue, one would expect to see these in the record.

(R. 31).  As for the opinions of consulting examiner, Dr. Jones, the ALJ stated,

> Similarly, the undersigned attaches little weight to the opinion of Dr. Karl
> Jones, M.D.  The claimant was not treated by the doctor, and appears only
> to have been seen by the doctor one time a couple of months before the
> hearing.  The doctor's almost uniform checking of a 'marked' limitation in
> the checklist is less than credible.  Tellingly, the doctor does not find the
> claimant has a substance abuse problem.  (See Exhibit 16F). . . .

*Id.*

As for the nonexamining, state agency psychologists, the ALJ noted that Dr. Leigh

Rosenberg reported moderate problems with concentration, persistence and pace and Dr.

Richard Lyon reported that Plaintiff did not have a severe mental impairment.  The ALJ

accorded these opinions "some weight," but noted that these doctors were not aware of the

extent of Plaintiff's alcohol problem.  (R. 31).

On review of the evidence, the ALJ found that Plaintiff's mental impairments limited

her ability to work but not "nearly as much" as alleged.  The ALJ determined that Plaintiff

should avoid contact with the general public and have only occasional interaction with

coworkers and supervisors.  (R. 31).  The ALJ found that Plaintiff's "alleged sleepiness, concentration and memory problems were the direct result of [her] alcohol abuse, and contributed greatly to her social functioning difficulties."  The ALJ further found that, "as the claimant alleges her abuse of alcohol has stopped, the undersigned expects her ability to function in these areas will correspondingly improve - - although the alcohol abuse has been accounted for in the residual functional capacity."  (R. 31-32).

In this circuit, certain rules apply to the consideration of the medical opinions of treating, examining, and nonexamining doctors.  "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Id.*

When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  *Winschel*, 631 F.3d at 1178 (citing *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997)).  Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record.  *Id.* (citing and quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)).

9

The opinion of an examining doctor typically is entitled to more weight than the opinion of a nonexamining doctor.  20 C.F.R. § 404.1527(c)(1); *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir. 1985).  The reports of nonexamining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence on which to base an administrative decision.  *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir. 1987)).  However, an ALJ may rely on opinions of nonexamining sources when they do not conflict with those of examining sources.  *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

While I make no finding that Plaintiff is disabled by reason of her mental condition, I conclude a remand is necessary for further consideration of the opinion evidence because the ALJ has failed to offer adequate good cause for rejecting the opinion evidence from Dr. Donahue.  As the decision reflects, the opinion evidence from this long-term, treating doctor was discounted principally because the ALJ concluded that Plaintiff was not candid with Dr. Donahue concerning her alcohol use and the doctor appeared unaware of the extent of her alcohol problem.[3]  While Plaintiff's inconsistent reporting on her alcohol use may possibly

---

[3]On this record, it is not entirely clear that Plaintiff was not candid with Dr. Donahue, that Plaintiff abused alcohol during the entire pertinent period, or that Dr. Donahue was unaware of the extent of her alleged alcohol problem.  Dr. Donahue clearly was aware of Plaintiff's problem with alcohol as he often diagnosed alcohol abuse, alcohol abuse in partial remission, or alcohol abuse in remission.  (R. 460-67, 491).  Additionally, Plaintiff reported to him on at least one occasion that her alcohol use increased when her levels of stress and anxiety increased and thus he was aware of the fact that Plaintiff drank excessively at certain times in her life.  (R. 464).  On this record, I do not find substantial support for the ALJ's repeated reference to Plaintiff drinking excessively and that she mislead her doctor on the extent of her alcohol consumption.  Although Plaintiff testified at the hearing that she had been drinking a liter of vodka a week, the record simply does not reveal that she drank to that

raise concerns about her own credibility, absent more, I cannot agree that it demonstrates good cause for discounting Dr. Donahue's opinion that Plaintiff suffered marked limitations across a wide array of mental activities.[4]  Here, the ALJ appears to conclude the doctor's opinion evidence was not credible because he was misinformed as to Plaintiff's drinking. However, as noted above, that conclusion is not necessarily supported by the record.  More importantly, I can find no record basis to support that the doctor's opinion would have been different had he believed Plaintiff was still drinking at the time he rendered his opinions and the ALJ's assumption that it would is not supported by anything other than the ALJ's conclusion.  I reach the same conclusion with regards to the ALJ's secondary conclusion that Dr. Donahue's opinion still would be unsupported even if Plaintiff's "abuse of alcohol has been reduced."  The ALJ bases that conclusion on Plaintiff's self-report to Dr. Jones in July 2011 that she drinks three drinks every couple of weeks.  How that statement undercuts the opinions of her treating psychiatrist is not explained.  In short, the ALJ's reference to these factors does not establish good cause for rejecting the entirety of this treating doctor's opinion on Plaintiff's mental functional capacity.

       While the ALJ also rejected Dr. Donahue's "extreme limitations" because the record did not reflect that Plaintiff underwent extensive therapy or hospitalization "one would expect to see," standing alone I am unable to find that an adequate of showing of good cause.  A fair reading of Plaintiff's testimony reveals that she did not seek or obtain treatment beyond that

---

extent on a continual or extended basis.

       [4]The Commissioner does not offer legal support for that assertion.  My research has not revealed any cases on point.

from Dr. Donahue because she did not have insurance. (R. 48). Notably, the ALJ did not

make further inquiry into that matter. If Plaintiff did not seek counseling due to financial

constraints, the ALJ's stated reason would be invalidated. Further, while the ALJ and the

Commissioner assert that Plaintiff's lack of hospitalizations is relevant to show an

inconsistency between the record and Dr. Donahue's opinions and/or response indicating that

Plaintiff had required hospitalizations previously, I disagree.[5] While psychiatric

hospitalizations may support the finding of severe impairment in functioning, the absence of

psychiatric hospitalizations is not necessarily inconsistent with the same. *See Adkins v.

Astrue*, No. 3:09-cv-217, 2010 WL 3782388, at * 9 (N.D. Ind. Sept. 21, 2010).[6]

I also find that even had the ALJ demonstrated some adequate good cause for

rejecting certain of Dr. Donahue's opinions, I do not find any support for her wholesale

rejection of the entirety of the treating psychiatrist's opinions. As noted by Plaintiff, in the

absence of according the opinion controlling weight, the ALJ was required to consider the

---

[5]The record reflects hospitalizations prior to Plaintiff's alleged onset date (R. 404, 470, 477, 491).

[6]Contrary to the Commissioner's assertion, I find the rationale in *Adkins* persuasive. While that case is not controlling, there is controlling authority for the proposition that an ALJ may not substitute his opinion for that of a claimant's doctor or play doctor herself. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (ALJ may not substitute his opinion for that of a doctor); *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (same); *see also Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring)(finding that an "ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians").

12

regulatory factors for treating opinion evidence in weighing the doctor's opinions.[7]  *See* 20

C.F.R. § 404.1527(c)(2).  Here, it appears the ALJ failed to do so.

     I also find that the reasons provided by the ALJ for rejecting Dr. Jones' opinion are

unsupported.  While Dr. Jones evaluated Plaintiff on only one occasion, that does not

demonstrate that his opinion was not credible, particularly given that the ALJ accorded more

weight to the opinions of doctors that never evaluated Plaintiff and did not have a complete

record on which to review when formulating their opinions.  The second reason, i.e., that

uniform checkmarking of marked limitations on a checklist is not credible, the ALJ ignores

that Dr. Jones also prepared a lengthy report in which he reviewed the whole of Plaintiff's

mental health records and conducted a mental status examination.  (R. 476-80).  The third and

last reason is also unsupported because Dr. Jones did in fact find that Plaintiff had a substance

abuse problem – his diagnostic impressions included alcohol abuse in remission.  (R. 479).

     The ALJ's consideration of the nonexamining doctors' opinions is also troublesome.

The ALJ accords both "some weight" but she does not specify which part of their opinions

she found credible.  (R. 31).  One of the nonexamining doctors concluded that Plaintiff's

mental impairment was not severe (R. 431), which would beg the question just which portion

of that opinion was given some weight?  The other nonexamining doctor found limitations

---

[7]Among factors for consideration are the length and frequency of treatment and the
doctor's specialization, if any.  20 C.F.R. § 404.1527(c).  Here, it is undisputed that Dr.
Donahue treated Plaintiff every few months over a number of years and it appears that he
specialized in psychiatry.  Although the Commissioner suggests Dr. Donahue is not a
psychiatrist because a state license verification website indicates only that he is an osteopathic
physician and has an address that includes "psychiatric service" in the title, the website also
reflects that he is board certified in neurology and did his residency in psychiatry.  *See*
http://ww2.doh.state.fl.us/IRM00profiling/ProfileEDUC.asp?LicId=7307&ProfNBR=1901
(last visited June 18, 2014).

beyond those assessed by the ALJ.  *See* (R. 434-36).  Aside from noting that the

nonexamining doctors were unaware of the extent of Plaintiff's alcohol problem (R. 31), a

reason which appears contradicted by the reports, the ALJ offers no further discussion on why

the opinions merited or did not merit some weight.

     For the above reasons, I conclude that the ALJ did not properly consider the opinions

of the treating, examining, and nonexamining mental health sources and thus a remand on this

basis is warranted.[8]

     Because the ALJ's consideration of the treating, examining, and nonexamining

mental health doctors may affect his consideration of Plaintiff's credibility, Plaintiff's second

claim of error need not be addressed.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th

Cir. 1986) (stating that where remand is required, it may be unnecessary to review other

issues raised).

### D.

     For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is not supported by substantial evidence or is not in

accordance with the correct legal standards, and I recommend that it be reversed and

remanded for further proceedings before the Commissioner consistent with this Report and

Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor

---

[8]The ALJ's failure to adequately consider the mental health record calls into question the ALJ's mental residual functional capacity determination.  While Plaintiff does not specifically challenge that determination, I note that it is unclear how the ALJ assessed the limitations she did.  Also troubling is the ALJ's finding that Plaintiff's "alleged sleepiness, concentration and memory problems were the direct result of [her] alcohol abuse, and contributed greatly to her social functioning difficulties."  (R. 31-32).  My review of the record does not reveal that those complaints were the direct result of alcohol abuse.

of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon

further pleadings.

Respectfully submitted this
23rd day of June 2014.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by

a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record